IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SHARON OGBUEZE,<br><br>               Plaintiff,<br><br>v.<br><br>WORLD OMNI LEASE FINANCE LLC (d/b/a SOUTHEAST TOYOTA FINANCE); EXPERIAN INFORMATION SOLUTIONS, INC.; EQUIFAX INFORMATION SERVICES, LLC,<br><br>               Defendants. | Civil Action No.: 3:23-cv-00320<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Sharon Ogbueze ("Plaintiff" or "Ms. Ogbueze"), by and through the undersigned counsel, brings this Complaint and Demand for Jury Trial ("Complaint") against Defendants Experian Information Solutions, Inc.; Equifax Information Services, LLC ("Equifax") (collectively, the "CRA Defendants"); and, World Omni Lease Finance LLC (d/b/a Southeast Toyota Finance), (all collectively, "Defendants"), alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*

## JURISDICTION AND VENUE

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 as Plaintiff alleges violations of federal laws: 15 U.S.C. § 1681.

2. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this District.

3. Defendants transact business in this District; Defendants purposefully avail themselves of the protections of this District; and Defendants regularly direct business at the District, such that personal jurisdiction is established.

## PARTIES

4. Plaintiff resides in Charlotte, North Carolina and qualifies as a "consumer" as defined and protected by the FCRA. Plaintiff is a natural person, not an entity.

5. Defendant World Omni Lease Finance LLC (d/b/a Southeast Toyota Finance) ("Toyota Finance") is an Alabama company that regularly conducts business in this District. Toyota Finance maintains its principal place of business at 6150 Omni Park Drive, Mobile, AL 36609. Toyota can be served through its registered agent, United Agent Group, Inc., 4000 Eagle Point Corporate Drive, Birmingham, Alabama 35242.

6. Toyota Finance is a financial institution that regularly provides automobile financing to consumers. Toyota Finance regularly furnishes consumer credit information to credit reporting agencies. Therefore, Toyota Finance is a "furnisher" of consumer credit information as that term is contemplated by 15 U.S.C. §1681s-2.

7. Defendant Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Experian maintains a principal place of business and can be served at 475 Anton Boulevard, Costa Mesa, California 92626.

8. Experian qualifies as a "consumer reporting agency" ("CRA") under the FCRA as it "regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties" in exchange for monetary compensation, by means of interstate commerce. 15 U.S.C. § 1681a(f).

9. Defendant Equifax is a Georgia corporation that regularly conducts business in this District. Equifax maintains a principal place of business at 1550 Peachtree Street NW, Atlanta,

Georgia 30309 and can be served through its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

10. Equifax qualifies as a "consumer reporting agency" ("CRA") under the FCRA as it "regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties" in exchange for monetary compensation, by means of interstate commerce. 15 U.S.C. § 1681a(f).

11. At all times relevant to this Complaint, Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL BACKGROUND

12. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

13. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

14. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

15. Defendants Experian, Equifax, and Trans Union, the three major consumer reporting agencies in the United States (the "CRA Defendants" collectively), regularly publish and

3

distribute credit information about Plaintiff and other consumers through the sale of consumer reports (also known as credit reports).

16. Furnishers such as Defendant Toyota Finance regularly provide credit and loan account information to the CRAs about their customers.

17. The CRA Defendants' consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

18. The vast majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendants) to make lending decisions.

19. Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, date of delinquencies contained in Defendant's consumer reports.

20. The information the CRA Defendants include in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

4

21. FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

22. FICO Scores factor in the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

   a. "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

   b. The "amount of debt" a consumer owes has a major impact on their credit score. When a CRA reports a debt as outstanding when it is in fact not owed, the CRA is indicating that a consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact a consumer's credit score.

23. Lenders also consider a consumer's debt-to-income ratio (DTI) based on the total amount of debt reported by Defendants in consumer reports. DTI compares the total amount a consumer owes to the total amount a consumer earns.

24. A consumer's income, however, is not included in their consumer report; only their amount of debt is. A consumer's income is entered into credit applications by the consumer.

25. Lenders consider a consumer's DTI when deciding whether to approve financing and the credit terms thereof.

26. The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for a consumer to obtain credit and favorable credit terms (e.g., higher interest, lower credit limits).

27. Accounts reported with derogatory Payment History, such as "charged off" can significantly impact a consumer's credit scores, making it more difficult for them to obtain favorable credit.

## FACTUAL ALLEGATIONS

28. Plaintiff, Ms. Ogbueze, is a mother, wife, and resident of Charlotte, North Carolina, where she resides with her husband.

29. In or around May 2016, Plaintiff leased a 2016 Toyota Corolla for a lease term of three years.

30. On April 14, 2019, right before her lease was up, Plaintiff returned her 2016 Toyota Corolla and received a LEASE TERMINATION ACKNOWLEDGMENT.

[Image of Toyota Southeast Toyota Finance "Lease Termination Acknowledgment" form. Lessee Name: Maren Ogbuefi. Leased Vehicle: 2017 Toyota Corolla, VIN 5T1BURHE[...]56674. Odometer Reading on Vehicle Return Date: 68445 Miles. The box checked is "Returned Vehicle At End Of Lease; All Scheduled Payments Already Made." The vehicle was returned to dealer on 4-14-19. Signed by lessee and authorized dealer representative.]

31. The Acknowledgement from Toyota Finance states that Plaintiff "**Returned Vehicle At End Of Lease; All Scheduled Payments Already Made**." The lease was completed, and Plaintiff owed nothing else on the car. Plaintiff did not purchase another car from Toyota Finance but instead purchased a 2019 Kia from Kia Finance.

7

32. However, soon thereafter, Plaintiff noticed from her Identity IQ credit monitoring service that Defendants began reporting to her credit reports that she still owed money on the lease.

33. Specifically, Defendants Experian and Equifax, and non-party Trans Union reported the SE Toyota Finance/WOFC account starting with 4203303* and opened April 1, 2016 (the "Account") was timely paid for 36 months through April 2019 and then suddenly (and inexplicably) Charged Off in August 2019.

34. Defendants Experian and Equifax and non-party Trans Union also reported that Plaintiff owes a Balance of $7,768, a Past Due amount of $7,768 and continues to update the monthly payment history as Charged Off each month to the present day.

35. However, the three-year lease was completed and paid off in April 2019 so it could not have possibly been "charged off" in August 2019 with a balance owed.

36. In February 2020, Plaintiff received a collection letter from Synergetic Communication, Inc. on behalf of Defendant Toyota Finance stating Plaintiff owed $7,768.16.

37. In August 2020, Plaintiff received a collection letter from SRA Associates on behalf of Defendant Toyota Finance stating she owed $7,768.15.

38. In or around January 2021, Plaintiff disputed the reporting of the Account by mailing letters to Defendants Experian and Equifax and non-party Trans Union stating that the lease had been paid in full.

39. Upon information and belief, Defendants Experian and Equifax forwarded Plaintiff's disputes to Defendant Toyota Finance.

40. Trans Union deleted the Account after Plaintiff's dispute.

41. However, Defendants Experian and Equifax refused to correct the reporting of the Account and simply "verified" the reporting as accurate.

42. Upon information and belief, Toyota Finance continues to report the inaccurate Account to all three CRAs, but only non-party Trans Union has blocked the Account from reporting.

43. Plaintiff disputed with Experian and Equifax several more times in 2021 and 2022 but continued to get the same result – refusal to make corrections to the Account by removing the derogatory information or no response at all.

44. Frustrated and tired of being ignored, in November 2022, Plaintiff sent letters to Equifax and Experian (dated November 8, 2022) via certified mail. According to tracking receipts, Equifax received Plaintiff's dispute on November 20, 2022 and Experian received Plaintiff's dispute on November 21, 2022.

45. In her dispute letter, Plaintiff explained that she had leased a 2016 Toyota Corolla in April 2016 and made all payments on time until the end of the lease. She also stated that she had been offered a trade-in but decided against it and turned in the 2016 Toyota Corolla on April 14, 2019 (at the end of the lease) and she referenced the Lease Termination Acknowledgement dated April 14, 2019.

46. Included with Plaintiff's dispute was a complete copy of the Lease Termination Acknowledgement stating that she had returned the vehicle at the end of her lease and had made all scheduled payments.

47. Plaintiff also attached a copy of her driver's license and a bank statement verifying her address.

48. Upon information and belief, Defendants Experian and Equifax forwarded Plaintiff's disputes to Defendant Toyota Finance.

49. However, Plaintiff never even received any responses to her latest dispute letters.

9

50. On April 3, 2023, Plaintiff obtained her Equifax report (number 3594878457) and Experian report (number 4286-2642-76) from www.annualcreditreport.com, which form the basis of this action. Defendants continue to inaccurately report the Account. Below is a copy of the Accounts reporting on Plaintiff's Experian report.



|      |   |   |   |   |    |    |    |    |    |    |    |    |
|------|---|---|---|---|----|----|----|----|----|----|----|----|
| 2022 | CO| CO| CO| CO| CO | CO | CO | CO | CO | CO | –  | –  |
| 2021 | CO| CO| CO| CO| CO | CO | CO | CO | CO | CO | CO | CO |
| 2020 | CO| CO| CO| CO| CO | CO | CO | CO | CO | CO | CO | CO |
| 2019 | ✓ | ✓ | ✓ | ✓ | ND | ND | ND | CO | CO | CO | CO | CO |
| 2018 | ✓ | ✓ | ✓ | ✓ | ND | ND | ND | ND | ND | ND | ✓  | ✓  |
| 2017 | ✓ | ✓ | ✓ | ✓ | ✓  | ✓  | ✓  | ✓  | ✓  | ✓  | ✓  | ✓  |
| 2016 | – | – | – | – | ✓  | ✓  | ✓  | ✓  | ✓  | ✓  | ✓  | ✓  |

✓ Current / Terms met   CO Charge off
ND No data for this period

**Payment history guide**

Charge Off as of Oct 2022, Sep 2022, Aug 2022, Jul 2022, Jun 2022, May 2022, Apr 2022, Mar 2022, Feb 2022, Jan 2022, Dec 2021, Nov 2021, Oct 2021, Sep 2021, Aug 2021, Jul 2021, Jun 2021, May 2021, Apr 2021, Mar 2021, Feb 2021, Jan 2021, Dec 2020, Nov 2020, Oct 2020, Sep 2020, Aug 2020, Jul 2020, Jun 2020, May 2020, Apr 2020, Mar 2020, Feb 2020, Jan 2020, Dec 2019, Nov 2019, Oct 2019, Sep 2019, Aug 2019

51. Since Plaintiff's disputes in 2021 until now Plaintiff has been denied credit many times. Plaintiff only has one other negative account reporting only $236 owed. The Toyota Finance Account, reporting a charge off of almost $8000, and which is being updated negatively every month, is significantly impacting Plaintiff's credit scores and DTI.

52. As a result of the conduct by Defendants, Plaintiff has been denied credit by Citizen Bank, SOFI, Celtic Bank, and Greensky.

53. Since 2021, the inaccurate reporting by Defendants has been published to at least thirty creditors. Plaintiff applied for and was approved for credit with Comenity Bank, American Express, Colony, and Lending Club, but received less than favorable terms due to the inaccurate reporting by Defendants.

54. Plaintiff has spent years repeatedly disputing the inaccurate reporting, even sending proof of the inaccuracy, yet Defendants have continued to this day to ignore her and unfairly harm her credit. Plaintiff is exhausted by the ineffectual process and has been at a loss for how she can recover her damaged credit reputation.

55. As a result of this conduct, action, and inaction by each of the Defendants, Plaintiff has suffered actual damages, including but not limited to: decreased creditworthiness, credit denial, credit approval at less favorable rates, financial insecurity, lost time attempting to correct the Defendants' inaccuracies, expenditure of labor and effort attempting to correct the Defendants' inaccuracies, sleepless nights, stress, frustration, embarrassment, humiliation, wasted time, mental anguish, and other harm continuing in nature.

56. Further, as a result of this conduct, action, and inaction of each of the Defendants, Plaintiff has experienced stress-related headaches and anxiety for which she is forced to take over the counter medications to manage and cope.

## COUNT I
### Experian's and Equifax's Violations of 15 U.S.C. § 1681e(b)

57. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

58. The FCRA requires consumer reporting agencies, like the CRA Defendants, to maintain reasonable procedures to ensure they compile and disburse consumer credit information with maximal accuracy. 15 U.S.C. § 1681e(b).

59. The CRA Defendants violated 15 U.S.C. § 1681e(b) by failing to establish, maintain, and/or follow reasonable procedures to assure maximum possible accuracy in the preparation and maintenance of Plaintiff's consumer reports and consumer file.

60. Specifically, the CRA Defendants failed to maintain procedures that ensured they did not inaccurately report Plaintiff's Account with a balance owed after Plaintiff informed them that the Account had been paid off at the end of the lease when she turned the car in.

61. The CRA Defendants also failed to maintain procedures that ensured they did not report derogatory information after the lease was completed and paid off and the Account should have been closed, after Plaintiff informed them of such and attached proof.

62. The CRA Defendants have been sued by thousands of other consumers in the past who have alleged their dispute procedures were unreasonable and violative of the FCRA.

63. Therefore, the CRA Defendants had actual notice of their deficient procedures.

64. In this case, however, the CRA Defendants received actual notice that their procedures were unreasonable as applied to Plaintiff.

65. It is wholly unreasonable to maintain procedures that allow blind reliance on the information provided by the furnisher of disputed information, especially when the information provided by a furnisher conflicts with proof documentation (from the furnisher) provided by the consumer.

66. As a result of this conduct, action, and inaction of the CRA Defendants, Plaintiff has suffered actual damages, including but not limited to: decreased creditworthiness, credit denial, credit approval at less favorable rates, financial insecurity, sleepless nights, stress, frustration, embarrassment, humiliation, labor expended disputing the reporting, wasted time, mental anguish, and other harm continuing in nature.

67. The CRA Defendants' violations of the FCRA were both willful and knowing. Therefore, the CRA Defendants are individually liable to Plaintiff for actual, statutory, and punitive damages in an amount to be determined at trial. 15 U.S.C. §§ 1681n, 1681o.

68. Alternatively, the CRA Defendants' violations of the FCRA were negligent. Therefore, the CRA Defendants are individually liable to Plaintiff for statutory and actual damages. 15 U.S.C. § 1681o.

69. In any event, the CRA Defendants are individually liable for Plaintiff's reasonable attorney's fees and costs. 15 U.S.C. §§ 1681n, 1681o.

## COUNT II
### Experian's and Equifax's Violations of 15 U.S.C. § 1681i

70. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

71. Under the FCRA, when a consumer reporting agency receives a dispute from a consumer that indicates an item of information in their consumer file is inaccurate or incomplete, the consumer reporting agency is required to: conduct a reasonable investigation of the disputed information and forward the dispute to the furnisher within five days of its receipt. 15 U.S.C. § 1681i.

72. The CRA Defendants violated 15 U.S.C. § 1681i(a)(1) on by failing to conduct a reasonable investigation to determine whether the information it reported about Plaintiff and her Account was accurate.

73. The CRA Defendants either failed to correct the inaccurate reporting and remove the derogatory Account information from their credit files.

74. Upon information and belief, the CRA Defendants continued to blindly rely on inaccurate information provided by the furnisher despite possessing information provided by Plaintiff that directly conflicted with Plaintiff owing any money on the Account after April 2019.

75. Upon information and belief, the CRA Defendants had reason to know that the information furnished by Toyota Finance was inaccurate or otherwise unreliable.

76. The CRA Defendants possessed information provided by Plaintiff that directly contradicted Toyota Finance's reporting of the derogatory information.

77. Yet despite knowledge of the information's unreliability, the CRA Defendants made no independent effort to verify its accuracy.

78. Upon information and belief, the CRA Defendants violated the FCRA by failing to provide Toyota Finance with all the relevant information regarding Plaintiff, her dispute(s), and the Account. 15 U.S.C. § 1681i(a)(2)(A).

79. The CRA Defendants violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate information from Plaintiff's consumer files upon reinvestigation of Plaintiff's disputes.

80. As a result of the CRA Defendants' violations of 15 U.S.C. § 1681i, Plaintiff suffered actual damages which have been further described above.

81. The CRA Defendants' violations of the FCRA were both willful and knowing. Therefore, the CRA Defendants are liable to Plaintiff for actual, statutory, and punitive damages in an amount to be determined at trial. 15 U.S.C. §§ 1681n, 1681o.

82. Alternatively, the CRA Defendants' violations of the FCRA were negligent. Therefore, the CRA Defendants are liable to Plaintiff for statutory and actual damages. 15 U.S.C. § 1681o.

83. In any event, the CRA Defendants are liable for Plaintiff's reasonable attorney's fees and costs. 15 U.S.C. §§ 1681n, 1681o.

## COUNT III
### Toyota Finance's Violations of 15 U.S.C. § 1681s-2(b)

84. Plaintiff incorporates by reference the above paragraphs of this Complaint as though fully stated herein.

85. At all times pertinent hereto, Toyota Finance a "person" as that term is defined by 15 U.S.C. § 1681a(b) and a "furnisher of information" to the consumer reporting agencies, including Trans Union.

86. Toyota Finance has a duty to provide accurate information to consumer reporting agencies, and to correct inaccurate information after receiving notice of a dispute directly from a consumer, see 15 U.S.C. § 1681s-2(a).

87. Toyota Finance failed to follow reasonable procedures to ensure it only provided maximally accurate information about Plaintiff's Account to the consumer reporting agencies.

88. On at least one occasion within the past two years, by example only and without limitation, Toyota Finance also violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's dispute.

89. Upon receipt of a consumer dispute from a consumer reporting agency, furnishers like Toyota Finance are required to: conduct an investigation with respect to the disputed information; review all relevant information; report the results of the investigation to the consumer reporting agency; and, if the investigation reveals that the information is incomplete or inaccurate, to report those results to all other consumer reporting agencies to which the furnisher has provided the inaccurate information.

90. Upon information and belief, Toyota Finance received notice of one or more of Plaintiff's disputes to Experian, and Equifax.

91. Upon information and belief, Toyota Finance received notice of each of Plaintiff's disputes to Experian, and Equifax.

92. Each time Toyota Finance was notified of the inaccuracies relating to Plaintiff's Toyota Finance Account, Toyota Finance failed to properly investigate Plaintiff's disputes.

16

Case 3:23-cv-00320-MOC-SCR    Document 1    Filed 05/26/23    Page 16 of 20

93. Consequently, Toyota Finance failed to furnish maximally accurate information regarding Plaintiff's Account to Trans Union, Experian, and Equifax.

94. Toyota Finance knew from its own records that Plaintiff's lease concluded in April 2019, and she owed no further debt on the Account.

95. Despite receiving Plaintiff's dispute(s) with documented proof of the Termination Acknowledgement (on Toyota Finance letterhead), Toyota Finance failed to correct its obviously inaccurate reporting. There is just no excuse for Toyota Finance to ignore its own records so it could illegally collect money from Plaintiff which she undisputedly does not owe.

96. Upon information and belief, Toyota Finance also failed to send its investigation results to the other consumer reporting agencies that had received inaccurate or incomplete information about Plaintiff's Toyota Finance Account.

97. Upon information and belief, Toyota Finance's actions in the instant matter are representative of its normal policies and procedures.

98. Upon information and belief, Toyota Finance's regular investigation procedures do not require a reasonable review of a tradeline that is disputed by a consumer. Rather, Toyota Finance's regular procedures allow it to respond to disputes after conducting only a cursory review of the account at issue.

99. The above-described conduct violated 15 U.S.C. § 1681s-2(b).

100. Toyota Finance violated 15 U.S.C. § 1681s-2(b) in the following manner:

    a. By willfully and/or negligently failing to conduct an investigation of the disputed Toyota Finance Account;

    b. By willfully and/or negligently failing to review all relevant information concerning Plaintiff's Toyota Finance Account;

      c.     By willfully and/or negligently failing to report the results of its investigation of the disputed Toyota Finance Account to all credit reporting agencies;

      d.     By willfully and/or negligently failing to modify or delete incomplete or inaccurate information in Plaintiff's file after conducting an investigation of her disputes;

      e.     By willfully and/or negligently failing to modify or delete inaccurate or incomplete information after conducting a reinvestigation of the disputed information;

      f.     By willfully and/or negligently failing to comply with all requirements imposed on "furnishers of information" by 15 U.S.C. § 1681s-2(b).

101. As a result of this conduct, action, and inaction of Toyota Finance, Plaintiff has suffered actual damages, including but not limited to: decreased creditworthiness, credit denial, credit approval at less favorable rates, financial insecurity, sleepless nights, stress, frustration, embarrassment, humiliation, wasted time, labor expended disputing, mental anguish, and other harm continuing in nature.

102. Toyota Finance's violations of the FCRA were both willful and knowing. Therefore, Toyota Finance is individually liable to Plaintiff for actual, statutory, and punitive damages in an amount to be determined at trial. 15 U.S.C. §§ 1681n, 1681o.

103. Alternatively, Toyota Finance's violations of the FCRA were negligent. Therefore, Toyota Finance is individually liable to Plaintiff for statutory and actual damages. 15 U.S.C. § 1681o.

104. In any event, Toyota Finance is individually liable for Plaintiff's reasonable attorney's fees and costs. 15 U.S.C. §§ 1681n, 1681o.

## TRIAL BY JURY

105. Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests judgment be entered against Defendants, for the following:

a) Actual damages pursuant to 15 U.S.C. §§ 1681n, 1681o;

b) Statutory damages pursuant to 15 U.S.C. §§ 1681n, 1681o;

c) Punitive damages pursuant to 15 U.S.C. § 1681n;

d) Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n, 1681o;

e) Any pre-judgment and post-judgment interest as may be allowed under the law; and

f) Other and further relief as the Court may deem just and proper.

Dated: May 26, 2023

**CONSUMER ATTORNEYS**

*/s/ Dawn M. McCraw*
Dawn M. McCraw NCB #54714
8245 North 85th Way
Scottsdale, AZ 85258
T: (602) 807-1527
F: (718) 715-1750
E: dmccraw@consumerattorneys.com
*Attorneys for Plaintiff*
*Sharon Ogbueze*